OPINION
{¶ 1} This is an appeal by defendant-appellant, Ameritech Corp., from a judgment of the Franklin County Court of Common Pleas, finding that plaintiff-appellee, Donald J. Fitch, was entitled to participate in the state workers' compensation insurance fund. *Page 2 
 {¶ 2} On June 19, 2001, appellee was injured when, following a smoking break, a piece of revolving door frame struck him as he entered the office building where he worked. Appellant, appellee's employer at the time, leased space in the office building. Appellee subsequently filed a workers' compensation claim. After a series of administrative hearings, the Industrial Commission of Ohio ("commission") made a determination that appellee's injury occurred within the "zone of employment," and, thus, ordered payment of temporary total disability compensation to appellee.
 {¶ 3} Pursuant to R.C. 4123.512, appellant appealed the commission's determination to the trial court. On September 24, 2004, appellant filed a motion for summary judgment, asserting that appellee's claim was barred by the "coming and going" rule. Appellee filed a memorandum contra the motion for summary judgment.
 {¶ 4} By decision and entry filed February 8, 2005, the trial court denied appellant's motion for summary judgment. On March 10, 2005, appellant filed a motion for reconsideration, which the court subsequently denied. On May 19, 2005, the trial court filed an entry, based upon a "stipulation of the parties," converting the court's entry denying appellant's motion for summary judgment into a final judgment in favor of appellee, finding he was "entitled to participate in workers' compensation benefits." The trial court filed a revised judgment entry on November 21, 2005.
 {¶ 5} On appeal, appellant sets forth the following single assignment of error for review:
 The trial court erred by denying Defendant-Appellant's motion for summary judgment. *Page 3 
 {¶ 6} In this appeal, appellant challenges appellee's right to participate in the state workers' compensation fund, asserting that the trial court erred in failing to apply the coming and going rule, and in finding that the "zone of employment" exception to that rule was applicable. Appellant contends it had no control over the location of the accident, and that it received no benefit from appellee's presence in the revolving door.
 {¶ 7} The pertinent facts of this case, as developed through the deposition testimony of appellee, as well as the affidavit of Dusty O'Rourke, appellant's "attendance performance manager," are as follows. Appellee worked for appellant at an office building located at 150 East Gay Street. The building is 26 stories high, with two lower levels. Appellant occupied space in the building from the mezzanine through the 15th floor, and also occupied a portion of the 19th floor. Floors 16 through 26 were occupied by tenants other than appellant (with the exception of the portion of the 19th floor noted above).
 {¶ 8} In June 2001, the office building at 150 East Gay Street was owned by Property Ohio OBLS Limited Partnership, and the building was managed by C.B. Richard Ellis. Appellant leased space in the office building "without any ownership affiliation whatsoever," and with no maintenance responsibility. (O'Rourke Affidavit, at 2.) The lobby of 150 East Gay Street contained two retail establishments, A B Stores and Darz CafÉ, which serve the general public.
 {¶ 9} There are two street-level entrances (an "east" entrance and a "west" entrance) to the building, both fronting Gay Street, and appellant's employees were "free to enter the building by either entrance." (O'Rourke Affidavit, at 2.) According to *Page 4 
appellee, the company handbook provided that employees were authorized to enter and exit the building through those two doors.
 {¶ 10} Appellant's offices are non-smoking. According to O'Rourke, appellant did not have a designated smoking area; rather, some employees chose to smoke in a break room in the basement, while other employees "chose to smoke outside in an area outside the building that is open to the general public." (O'Rourke Affidavit, at 2.) O'Rourke further averred that the union contract is silent on the issue of employee smoking.
 {¶ 11} On June 19, 2001, appellee arrived at work around 9:00 a.m., his normal starting time. At 2:30 p.m., he took a 15-minute paid break. Specifically, appellee took a smoke break in the smoking area just outside the west side of the building, where "break tables" are located. (Appellee Depo., at 17.) After finishing his break, appellee re-entered the building through the door on the west entrance. As he entered the four-panel revolving door, appellee was injured when a steel support beam from the door came apart and struck him in back of his head/neck and left shoulder.
 {¶ 12} Despite some discrepancies, the primary facts, as set forth above, are not in dispute, and the issues presented essentially raise questions of law. When the issue presented on appeal involves a question of law, a reviewing court applies a de novo standard of review.Cleveland Electric Illuminating Co. v. Pub. Utilities Comm. of Ohio
(1996), 76 Ohio St.3d 521, 523.
 {¶ 13} Ohio's system of workers' compensation "was created `for the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment[.]'" State ex rel. Watts v. SchottensteinStores Corp. (1993), 68 Ohio St.3d 118, 122, quoting *Page 5 
Section 35, Article II, Ohio Constitution. Further, "[t]he test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether there is a `causal connection' between an employee's injury and his or her employment[.]" Shafer v. Tri-Arch 14,Inc., Cuyahoga App. No. 85188, 2005-Ohio-2845, at ¶ 8.
 {¶ 14} Pursuant to R.C. 4123.01(C), a workplace "injury" is defined as any injury "received in the course of, and arising out of, the injured employee's employment." The Ohio Supreme Court has held that "the statutory requirement that an injury be in the course of employment involves the time, place, and circumstances of the injury." Ruckman v.Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117, 120.
 {¶ 15} In contrast to the "in the course of employment" requirement, "`[t]he "arising out of" element * * * contemplates a causal connection between the injury and the employment.'" Id., at 121-122, quotingFisher v. Mayfield (1990), 49 Ohio St.3d 275, 277. In Fisher, the Ohio Supreme Court "reaffirmed use of the Lord v. Daugherty (1981),66 Ohio St.2d 441 * * * `totality of the circumstances' test to determine whether there exists a sufficient causal connection between injury and employment to justify a claimant's participation in the fund."Ruckman, supra, at 122. Under the totality of the circumstances test, the "primary analysis" involves a consideration of the following "facts and circumstances: `(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'" Id., quoting Lord, supra, at syllabus. *Page 6 
 {¶ 16} As a general proposition, "an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." MTD Products, Inc. v. Robatin (1991),61 Ohio St.3d 66, 68. The "coming and going" rule, however, does not operate as a complete bar to an employee commuting to and from work in instances where: "1) the injury occurs within the `zone of employment; ` 2) the employment creates a `special hazard; ` or 3) there is a causal connection between the employee's injury and employment based on the `totality of the circumstances' surrounding the accident."Shafer, supra, at ¶ 8, citing MTD Products, supra, at 68-70.
 {¶ 17} The zone of employment has been defined as "the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer." Merz v.Indus. Comm. (1938), 134 Ohio St. 36, 39. This zone "is not a fixed area, rather, its relative limits or expansion must be determined `from the logical and close association of the surrounding area to the premises of employment, together with the particular circumstances and hazards existing in relation thereto[.]'" Berry v. G.C. Murphy Co. (Oct. 2, 1981), Lucas App. No. L-81-049, quoting Frishkorn v. Flowers (1971),26 Ohio App.2d 165, 169. In this respect, "[t]he zone of employment has been extended beyond the employer's immediate premises in a number of situations, most of which involve parking lots over which the employer has some control, and it has also been extended to the public road providing access to the employer's premises." Lemming v. Univ. ofCincinnati (1987), 41 Ohio App.3d 194, 195. Ohio courts have found that the "zone of employment" exception may be satisfied when an employer leases the *Page 7 
parking lot where an employee was injured. Jesse v. The May Dept. StoresCo., Lake App. No. 2003-L-064, 2004-Ohio-5313, at ¶ 29. The "zone of employment" rule "has been applied before, during and after an employee's work hours." Remer v. Conrad, 153 Ohio App.3d 507,2003-Ohio-4096, at ¶ 11.
 {¶ 18} Ohio courts have held that "[c]ontrol can be established either over the physical location or by showing that because of conditions created by the employer, the employee has no choice as to how to travel to his or her employment." Gonzalez v. Admr, Bur. of Workers'Comp., Mahoning App. No. 03 MA 86, 2004-Ohio-1562, at ¶ 15. Thus, "an employer exerts control over an area when `the way used to enter or leave the place of employment is the sole and exclusive means of ingress and egress." Id., at ¶ 16, quoting Stevens v. Indus. Comm. (1945), 145 Ohio St.198, 201.
 {¶ 19} The issue of control, in the context of shopping centers or multiple retail outlets, was raised in Frishkorn, supra. Under the facts of that case, an employee of a grocery store, while walking to his employment, was struck by a car in the parking area of a shopping center where the grocery store was located. The employer's store was one of 43 retail outlets in the shopping plaza, and the employer asserted that the parking lot was not under its control or maintenance, thereby absolving it of any responsibility for its employee's injury. The trial court agreed, finding that the parking area was not part of the zone of employment for employees of tenants of the shopping center.
 {¶ 20} In Frishkorn, supra, at 167, the appellate court reversed, holding in relevant part:
 The "zone of employment" concept as pronounced by the Supreme Court of Ohio in Industrial Commission of Ohio v. Barber, 117 Ohio St. 373
and Merz v. Industrial Commission *Page 8 of Ohio, 134 Ohio St. 36, traditionally would imply that there must be actual ownership or control by the appellant's employer * * * over the complete area known as the Great Northern Shopping Center, where the business premises of appellant's employer are located, before there can be jurisdiction under the workmen's compensation law to consider the merits of appellant's injury sustained in the shopping center * * *
 It would be impractical and illogical to apply this principle to a shopping plaza consisting of multiple independent businesses, each of which would have to be an owner in common with all the other tenants in order to share a nebulous control over its geographical confines and simulate a joint zone of employment. Such concept is too narrow and restrictive and is as outmoded as holding that an accident sustained by an employee going to or leaving work by means of an elevator or stairway in a building shared in common by different tenants, did not occur in the course of or arise out of the employment because the elevator or stairway was not part of the premises over which the employee's particular employer exercised any control at the time and place of the accident.
 In contrast, the control of the premises test in this case should be viewed in the light of the control the employer has over claimant's work activities in the employment environment and whether such activities were reasonably incidental to and part of the necessary obligations of his job. It is of great significance that appellant's employer * * * was an inseparable business component of the shopping center environment in which the injury occurred. The employment environment, which should be an important test of control, extended constructively from the actual premises of the * * * [grocery] store to and included the parking area of the shopping center.
 {¶ 21} The court in Frishkorn, supra, at 168, further noted that, under the facts of that case, the parking area was the employee's "normal and customary means to and from his employer's premises to which such passageway was an indispensable appurtenance." Thus, as a practical matter, "the employer and the other tenants of the *Page 9 
Great Northern Shopping Center, having reciprocal rental rights and privileges, were also accorded the common use and access of the parking area." Id.
 {¶ 22} As noted, in the instant case, appellant contends it did not have control over the area where the injury occurred. In so arguing, appellant points to the affidavit of O'Rourke, who stated that appellant did not own the building; rather, appellant was just a tenant, and had no responsibility for maintenance of the building.
 {¶ 23} The law, however, does not require that an employer have exclusive control over the common area where an injury occurs, and, thus, the issue of ownership is not dispositive. Frishkorn, supra, at 167. Further, it is not required that the employer have actual control over the area of the injury if there is limited access to the place of employment. Meszaros v. Legal News Publishing Co. (2000),138 Ohio App.3d 645, 648.
 {¶ 24} The injury in the present case occurred at the entrance to the employer's building; to gain access to (and egress from) appellant's place of business, appellant's employees used one of two street entrances on Gay Street. At the time of the injury, the employee was attempting to enter the building to return to his work duties, following a paid break, using the "normal and customary means" of access to his employer's premises. Frishkorn, supra, at 168. To the extent appellant's employees used a designated entrance to the building, the employees' "activities were hampered and controlled" by the requirements of the job. Berry, supra (employee within zone of employment given proximity of alley to employee's place of employment, as well as the fact the entrance was the exclusive means of ingress and the employee was effectively at place of employment when she entered the alley). The fact that there were two entrance options (i.e., the east and west door) available to appellee to return to his work area is not *Page 10 
determinative as to whether the area where he was injured was within the zone of employment. Meszaros, supra, at 648 (eligibility should not be based on the fact employee, whose employer provided two means of access, picked one route over the other, as employee had to choose one of the routes to get to work).
 {¶ 25} The issue as to "[w]hether or not the employee's injuries are suffered in the `zone of employment' depends on the specific facts and circumstances of each case." Custard v. First Natl. Bank (June 5, 1998), Sandusky App. No. S-97-058. Under the particular facts of this case, we conclude, as a matter of law, that appellee was within the zone of employment at the time he was injured.
 {¶ 26} As noted above, in addition to arguing it had no control over the situs of the injury, appellant also contends it received no benefit from its employee's presence in the revolving door. Specifically, appellant argues that, because appellee was on a smoke break when the injury occurred, he was not engaged in his employer's business. Appellant, in essence, is arguing that the facts of this case do not establish a sufficient causal connection between the injury and appellee's employment to fall within the "totality of the circumstances" test; under that exception, one of the factors under that test includes "the benefit the employer received from the injured employee's presence at the scene of the accident." MTD Products, supra, at 70.[1] *Page 11 
 {¶ 27} To the extent the issue of "benefit" to the employer arguably implicates the requirement that the injury occur "in the course of and arising out of" the worker's employment, we do not find appellant's argument persuasive. Under Ohio law, "[t]he general rule is that injuries occurring to an employee during an intermission or break for rest or refreshment arise in the course of employment and are compensable." Bauder v. Mayfield (1988), 44 Ohio App.3d 91, 99-100. Thus, an employee "need not be injured in the actual performance of his duties because he is in the course of his employment when he does things that `are usually and reasonably incidental to the work of the employer.'" Rosado v. Cuyahoga Metro. Housing Auth., Inc., Cuyahoga App. No. 87922, 2007-Ohio-1164, at ¶ 10. Among those activities deemed "usually and reasonably incidental to the work of the employer" include "the taking of refreshments, rest and smoke, which are not forbidden by the employer[.]" Taylor v. Indus. Comm. (1920), 13 Ohio App. 262, 270. Under such circumstances, "it cannot be said as a matter of law that the injury was received outside the course of his employment." Id.
 {¶ 28} In the present case, it was undisputed that appellee was on a 15-minute paid smoke break sanctioned by his employer, and the employer was aware such breaks were taken by employees either in the basement of the office building or directly outside the building in the area where appellee took his break on June 19, 2001. Further, at the time of his injury, appellee was returning directly to his work area following the break, and there was no evidence of any deviation on his part. Based upon the evidence presented, we conclude, as a matter of law, that appellee was engaged in an undertaking incidental to and "consistent with * * * [his] employment" at the time of his injury. Bauder, supra, at 100 (injury to employee who was on break, left her place of employment and was walking *Page 12 
over to see friend and go to restroom and then back to work, arose in the course of employment and was compensable).
 {¶ 29} In light of our determination that appellee's injury occurred within the zone of employment, and, therefore, arose out of and in the course of his employment, we conclude that the trial court properly determined appellee was entitled to participate in the workers' compensation fund.
 {¶ 30} Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
[1] Courts have noted, however, that "the causal connection is established when the injury occurs within the zone of employment."Pursley v. MBNA Corp., Cuyahoga App. No. 88073, 2007-Ohio-1445, at ¶ 17. Thus, "[w]hether the employer benefitted from the employee's presence at the scene is one of the considerations in applying the totality of the circumstances exception to the coming and going rule, but not a consideration when applying the zone of employment analysis." Id., citing MTD, supra, at 68. See, also, Rock v. Parma Bd. ofEdn., Cuyahoga App. No. 79268 (noting that "MTD simply states that the causal connection is established when the injury is within the zone of employment").