[Cite as *Mangan v. Texas Roadhouse Mgt. Corp.*, 2021-Ohio-2201.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Patrick Mangan, Administrator     :
of the Estate of Griselda Lopez-Hernandez,
Deceased et al.,     :

       Plaintiffs-Appellants,     :     No. 20AP-42
                                (C.P.C. No. 19CV-1554)
v.     :

                              (REGULAR CALENDAR)
Texas Roadhouse Management Corp. et al.,:

       Defendants-Appellees.     :

D E C I S I O N

Rendered on June 29, 2021

**On brief:** *Malek & Malek*, and *James Malek*, for appellants.
**Argued:** *James Malek*.

**On brief:** *Perez & Morris, LLC, Elizabeth P. Weeden, Kevin L. Murch,* and *Celia M. Schnupp*, for appellee Texas Roadhouse Management Corp. **Argued:** *Celia M. Schnupp*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Plaintiffs-appellants, Patrick Mangan, Administrator of the Estate of Griselda Lopez-Hernandez, and members of Griselda Lopez-Hernandez's family including her two children, mother, and father ("appellants"), appeal the December 17, 2019 decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Texas Roadhouse Management Corp. ("TRMC") and Stephanie

McCloud,[1] then-Administrator of the Bureau of Workers' Compensation ("BWC"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}  This matter arises out of the tragic death of Griselda Lopez-Hernandez on October 25, 2015. On that day, Lopez-Hernandez was working at a restaurant operated by TRMC.  At 9:39 p.m., Lopez-Hernandez completed her shift, clocked out, and began walking home from the restaurant. While she was walking on Worthington Road, a vehicle struck Lopez-Hernandez, flinging her into a ditch alongside the roadway.  The driver of the vehicle that struck Lopez-Hernandez did not stop. Witnesses called 911, but Lopez-Hernandez perished before an ambulance arrived.

{¶ 3}  Appellants filed a claim for workers' compensation benefits. A district hearing officer conducted a hearing on the claim on May 11, 2016 and issued an order denying the claim dated May 17, 2016.  Appellants appealed to a staff hearing officer who conducted a hearing on June 22, 2016 and issued an order dated June 28, 2016 affirming the denial of the claim.  Appellants appealed the June 28, 2016 order of the staff hearing officer to the Industrial Commission of Ohio ("commission"). In an order dated July 19, 2016, a staff hearing officer appointed on behalf of the commission refused appellants' appeal.

{¶ 4}  On February 20, 2019, appellants, pursuant to R.C. 4123.512, filed in the trial court a complaint appealing the commission's order denying their claim for workers' compensation benefits.  In the complaint, appellants alleged that TRMC was or should have been aware that Lopez-Hernandez was "considered an 'undocumented worker' who was not authorized to work" in the United States. (Compl. at 6.) As alleged in the complaint, Lopez-Hernandez would often have to walk between her apartment and TRMC's restaurant because she did not have an automobile or an Ohio Driver's License.  Because Lopez-Hernandez worked variable hours on a "flex shift" in which the number of hours worked depended on the amount of work to be completed, she was often unable to find a co-worker able to give her a ride home when she completed her shift.  Appellants further alleged TRMC knew or should have known that part of the route that Lopez-Hernandez walked

---

[1] In November 2020, John Logue was appointed as Interim Administrator of the Ohio Bureau of Workers' Compensation by Governor Mike DeWine in place of McCloud who was asked to lead the Ohio Department of Health.

between her home and TRMC's restaurant did not have a sidewalk, was not well-lit, and was next to a busy roadway.

{¶ 5}   Appellants alleged that on October 25, 2015, after working for over 12 and one-half hours, Lopez-Hernandez was instructed to finish her shift and clock out at 9:39 p.m. No other employees were available to give Lopez-Hernandez a ride, so she began to walk home.  As she was walking home along a public roadway in the dark in a poorly lit area, Lopez-Hernandez was fatally struck by a vehicle.

{¶ 6}   On March 18, 2019, BWC filed an answer. On March 20, 2019, TRMC filed an answer. On August 6, 2019, TRMC filed a motion for summary judgment. On September 30, 2019, appellants filed a memo contra TRMC's motion for summary judgment.  On October 9, 2019, TRMC filed a reply in support of its motion for summary judgment.   On December 17, 2019, the trial court filed a decision and entry granting summary judgment in favor of TRMC.

## II. Assignment of Error

{¶ 7}   Appellants appeal and assign the following sole assignment of error for our review:

> The trial court erroneously granted defendant-appellees' motion for summary judgment because genuine issues of material fact remain which should properly be decided by a jury or in the alternative, the facts which were presented were sufficient to determine that the plaintiff-appellant's death arose out of her employment with defendant-appellee Texas Roadhouse.

## III. Discussion

{¶ 8}   In their sole assignment of error, appellants assert the trial court erred in granting summary judgment in favor of appellees because genuine issues of material fact were present such that the matter should have been submitted to a jury. Furthermore, appellants assert the record reflects that Lopez-Hernandez's death arose out of her employment with TRMC.

### A. Standard of Review

{¶ 9}   We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review,

without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 10} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the nonmoving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

### B. Analysis

{¶ 11} Pursuant to R.C. 4123.01(C), "[i]njury" is defined as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment," subject to certain specified exceptions. Thus, in order for an employee's injury to be compensable under Ohio's workers' compensation system, the injury must be both: (1) received in the course of, and (2) arising out of, the injured employee's employment. *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, ¶ 12. The employee bears the

burden of establishing both prongs of this statutory requirement. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 279 (1990).

{¶ 12} The "in the course of" prong relates to the "time, place, and circumstances of the injury." *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120 (1998). This prong limits workers' compensation benefits to employees who sustain injuries while performing "a required duty in the employer's service" or activity "consistent with the contract for hire and logically related to the employer's business." *Id.* Thus, under the "in the course of" prong, a court considers the time, place, and circumstances of the injury, to determine " 'whether the required nexus exists between the employment relationship and the injurious activity.' " *Cunningham v. Bone Dry Waterproofing, Inc.*, 10th Dist. No. 15AP-587, 2016-Ohio-3341, ¶ 9, quoting *Ruckman* at 120.

{¶ 13} The "arising out of" prong refers to the causal connection between the employment and the injury. *Ruckman* at 121-22. In determining whether the causal connection is sufficient to meet this prong, a court must consider the totality of the circumstances surrounding the accident including, but not limited to, the following factors: " '(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.' " *Fisher* at 277, quoting *Lord v. Daugherty*, 66 Ohio St.2d 441 (1981), syllabus. *See Freibel* at ¶ 14 (stating that the list of factors in *Lord* was "not exhaustive" and, therefore, "an employee may fail to establish one or more of these three factors and still be able to establish the requisite causal connection").

{¶ 14} Generally, "an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66 (1991), syllabus. This principle is commonly referred to as the "coming-and-going rule," which is "a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arises out of' the employment relationship so as to constitute a compensable injury." *Ruckman* at 119.

{¶ 15} The "coming-and-going" rule applies to "fixed-situs" employees. *Cunningham* at ¶ 11.  The Supreme Court of Ohio has defined a "fixed-situs employee" as one who begins his or her " 'substantial employment duties only after arriving at a specific and identifiable workplace designated by his [or her] employer.' " *Id.,* quoting *Ruckman* at paragraph one of the syllabus.  The determination of whether an employee is a "fixed-situs employee" is a "fact-specific inquiry and depends on the facts and circumstances surrounding the employment." *Freibel* at ¶ 16.  *See Ruckman* at 120 (finding that in cases involving "periodic relocation of job sites," including "reassign[ment] to a different work place monthly, weekly, or even daily," an employee could still be considered a fixed-situs employee, as "each particular job site may constitute a fixed place of employment").

{¶ 16} However, a determination that the claimant is a fixed-situs employee does not end the inquiry.  *Patidar v. Tri-State Renovations, Inc.*, 10th Dist. No. 06AP-212, 2006-Ohio-4631, ¶ 11.  In one exception to the coming-and-going rule, an injury may be compensable when it results from a " 'special hazard' inherent in the employment." *Freibel* at ¶ 17.  Under this "special hazard" exception, "[a] fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public." *Ruckman* at paragraph two of the syllabus.

{¶ 17} In the present matter, the trial court found Lopez-Hernandez was a fixed-situs employee subject to the coming-and-going rule.  The trial court also found no genuine issue of material fact existed such that the special hazard exception was applicable. As a result, the court found appellants could not as a matter of law demonstrate that Lopez-Hernandez suffered a compensable injury.

{¶ 18} Here, the essential facts of the matter are undisputed. Therefore, the issues presented are questions of law.  *See Fitch v. Ameritech Corp.*, 10th Dist. No. 05AP-1277, 2007-Ohio-2725, ¶ 12; *Brown v. Lake Erie Elec. Co.*, 12th Dist. No. CA2010-04-030, 2010-Ohio-4950, ¶ 21; *Barber v. Buckeye Masonry & Constr. Co.*, 146 Ohio App.3d 262, 272 (11th Dist.2001) ("In workers' compensation cases, when the undisputed evidence fails to establish an essential element of an injured employee's claim for participation in the

workers' compensation fund, a reviewing court may sustain the trial court's entry of summary judgment.").

{¶ 19} The undisputed facts of this matter reveal that Lopez-Hernandez did not commence her substantial employment duties until after she arrived at the specific, identifiable workplace designated by TRMC, namely TRMC's restaurant. Furthermore, Lopez-Hernandez was paid hourly and received pay for only the time she was working at the TRMC restaurant. There is no allegation that TRMC received any benefit from Lopez-Hernandez until she was on-site at the TRMC restaurant. Nor is there an allegation that Lopez-Hernandez performed any work-related activities outside of the TRMC restaurant or during the commute to and from the restaurant. As a result, we find the trial court did not err in determining Lopez-Hernandez was a fixed-situs employee.[2] *See Patidar* at ¶ 12. *Compare Cossin v. Ohio State Home Servs., Inc.,* 10th Dist. No. 12AP-132, 2012-Ohio-5664, ¶ 34 (finding claimant was not a "fixed-situs employee who, at the time of his accident, was commuting to or from his fixed situs of employment," but rather was "engaged in travel from the home of a potential customer to which he had driven, at his employer's direction").

{¶ 20} Appellants nevertheless contend that Lopez-Hernandez's injury is compensable due to the special hazard exception. In support of this contention, appellants point to the following: (1) Lopez-Hernandez commonly worked shifts greater than 12 hours, including over 12 and one-half hours on the day she was killed, (2) Lopez-Hernandez worked variable hours on a "flex shift," and therefore did not know when she would complete her work for the day, (3) Lopez-Hernandez left work when it was dark outside, (4) Lopez-Hernandez wore dark clothing consistent with TRMC's clothing policy, rendering it harder for drivers to see her when it was dark outside, (5) Lopez-Hernandez was undocumented and was unable to obtain a driver's license, and (6) Lopez-Hernandez did not speak English.

{¶ 21} In *Ruckman,* the Supreme Court recognized and clarified the special hazard exception. In that case, oil rigger employees of an oil drilling company were assigned to remote work locations that frequently changed. The riggers were required to work over a

---

[2] We note appellants do not contest the trial court's determination that Lopez-Hernandez was a fixed-situs employee.

three-state area for a time lasting between three and ten days.  In considering the facts and circumstances of the case, the court recognized three factors combined to make travel to the temporary drilling sites a special hazard of employment: (1) the temporary nature of the fixed work sites, (2) the constantly changing location of the fixed work sites, and (3) the distance of the riggers' commutes to the remote work sites. Importantly, "[u]nlike the typical fixed-situs employee," the riggers "did not know the location of future assignments, and it was impossible for them to fix their commute in relation to these remote work sites." *Ruckman* at 124.  Furthermore, relevant to this third condition, the riggers were required to report to work sites separated by significant distances both from each other and the central employment location.

{¶ 22}  The Supreme Court found that for most employees, the commuting distance to a fixed work site was "largely a personal choice."  *Id.* at 125.  The court noted that "[a]ny increased risk due a longer commute is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business." *Id.* The court distinguished the situation of the general public with that of the riggers, for whom the "employment relationship dictate[d] that the riggers undertake interstate and lengthy intrastate commutes, thereby significantly increasing their exposure to traffic risks associated with highway travel." *Id.* Thus, the court focused on the fact that the "employment relationship" between the riggers and their employer was the deciding factor in "expos[ing] an employee to the greater risk." *Id.*  Accordingly, the court held that a "fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his [or her] place of employment *where the travel serves a function of the employer's business* and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public."  (Emphasis added.)  *Id.*

{¶ 23}  We begin by recognizing that Lopez-Hernandez's "flex-shift" schedule served a function of TRMC's business and the variable shift ending times may have created unknown circumstances resulting in Lopez-Hernandez not being able to plan the mode or

hour of her commute home.[3]   We further recognize, however, that *Ruckman* addresses travel distance, not mode or hour.   Several factors distinguish the present matter from the circumstances giving rise to the special hazard in *Ruckman*. Here, the location of Lopez-Hernandez's fixed work site was permanent, unlike the temporary work sites in *Ruckman*. Furthermore, there was only a single work site to which Lopez-Hernandez reported, unlike the multiple work sites in *Ruckman*. In addition to the variable distances presented by the multiple work sites in *Ruckman*, the travel distance in that case was far greater than the brief commute at issue in this case.

{¶ 24} Here, the travel at issue in the present matter did not serve a function for TRMC's business. In *Ruckman*, the riggers were "dispatched * * * over a three-state area for work assignments typically lasting somewhere between three and ten days." *Id.* at 124. Thus, the travel was a function of the employer's business because the riggers were forced, as a condition of their employment, to travel long distances over interstate highways and across state lines to work. Here, Lopez-Hernandez's "employment relationship" with TRMC did not "dictate" the lengths she was required to travel to work.  *Ruckman* at 124. Thus, Lopez-Hernandez was able to exercise decision-making power over the length of her commute to work to a far greater extent than the riggers in *Ruckman*.  As a result, this situation more closely fits *Ruckman*'s description of a situation in which no special hazard is present in that "[a]ny increased risk * * * is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business." *Id. See Lipps v. Kash*, 12th Dist. No. CA2007-05-060, 2008-Ohio-2628, ¶ 19 (finding that special hazard exception did not apply because the nature of the employee's "extended commute was in no way attributable to [the employer]").

{¶ 25} Furthermore, although it was alleged that the incident in this case occurred while it was dark, we have previously found that traveling in the dark does not constitute a special hazard.  *Slagle v. White Castle Sys.*, *Inc.*, 79 Ohio App.3d 210, 215 (10th Dist.1992) (stating that "risks occurring late at night are not quantitatively different from those

---

[3] Brenda Lopez, decedent's sister, stated in her deposition: "Q.  In 2015 when Griselda lived with you, at the end of her shift, how did Griselda get home from Texas Roadhouse back to the apartment? A.  Sometimes Lola would give her a ride or somebody from the employees at the Texas Roadhouse will give her a ride to the apartment." (Brenda Lopez Depo. at 231.) Brenda testified that an aunt, Raymunda Hernandez, was with Lopez-Hernandez at the time of the accident.

encountered by the general public"). Accordingly, appellants' arguments on this point are without merit.

{¶ 26} Finally, appellants' arguments regarding Lopez-Hernandez's status as an undocumented worker and her lack of proficiency with the English language are irrelevant to our analysis of the special hazard exception. We have previously held that, in determining whether the special hazard exception applies, "[t]he existence of such a risk does not depend upon the individual characteristics of the employee injured," but rather "upon the nature of the risk or condition and whether that risk is greater for employees than it is for members of the general public." *Slagle* at 215. Thus, appellants' arguments on these points are not pertinent to the question of whether the special hazard exception applies.

{¶ 27} Based on facts and circumstances of this case, it cannot be said that the risks inherent in Lopez-Hernandez's commute were distinctive in nature from or quantitatively greater than risks common to the public. *See Green v. Marc Glassman, Inc.*, 11th Dist. No. 2017-P-0041, 2017-Ohio-9343, ¶ 18-19 (11th Dist.) (finding in case involving variable shifts that a "ninety-minute commute may be longer than a typical commute, but does not create or constitute a risk that is particularly distinctive"); *Deems v. Minute Men, Inc.*, 1st Dist. No. C-160296, 2016-Ohio-8259, ¶ 14; *Palette v. Fowler Elec. Co.*, 11th Dist. No. 2014-G-3196, 2014-Ohio-5376, ¶ 38 (finding special hazard rule did not apply were employee "frequently travel[ed] within the same approximate four-county radius," unlike the lengthy commute in *Ruckman*); *Foster v. Bur. of Workers' Comp.*, 2d Dist. No. 25657, 2013-Ohio-4075, ¶ 19 (finding special hazard rule did not apply because "risk of falling on an icy spot in a common parking area was not distinctive in nature or quantitatively greater than the risk faced by the general public" and employee was "free to park anywhere and chose to park where she did for personal reasons"); *Brown v. Lake Erie Elec. Co.*, 12th Dist. No. CA2010-04-030, 2010-Ohio-4950, ¶ 20; *Mackell v. Armco, Inc.*, 5th Dist. No. 01CA017, 2002-Ohio-3487, ¶ 55 (finding special hazard rule did not apply where employee fell asleep while driving after working a different shift from normal); *Johnston v. Case W. Res. Univ.*, 145 Ohio App.3d 77, 85 (8th Dist.2001) (holding that decedent's injuries were not the result of a special hazard inherent in her employment because "[e]very person using the sidewalk faced the same risk of being struck and injured by an out-of-control pickup truck"); *Robatin*

at 69 (finding that special hazard did not apply where employee "had to slow down because of congested traffic at the lot entrance while waiting to enter" because such incident was "a normal event in city driving and not a 'special' risk created by [the employer]"). *Compare McMasters v. Kilbarger Constr., Inc.*, 5th Dist. No. CT2015-0010, 2015-Ohio-4663, ¶ 24 (finding that because "working at various sites necessitated travel and the very nature of the employment mandated lengthy travel, the crew members were not compensated for housing, and [the employer] required the crew members to work long hours and extras hours, we find the special hazard rule has been fulfilled").  Therefore, viewing the evidence most strongly in favor of appellants, there remains no genuine issue of material fact as to whether the special hazard exception applies.  *Cunningham* at ¶ 22.

{¶ 28} Although we are sympathetic to the great loss resulting from Lopez-Hernandez's death, the workers' compensation system is not the proper venue for appellants' claim as the circumstances of this case do not meet the statutory definition of injury pursuant to R.C. 4123.01(C).  Thus, we find the trial court did not err in concluding that summary judgment was proper.  Accordingly, on the facts of this case, we overrule appellants' sole assignment of error.

**IV. Conclusion**

{¶ 29} Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

———————————